**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS BROWNSVILLE DIVISION**

**BERI DAVE,**

**PLAINTIFF**

**VS**

**Case: 1:20-cv-00209**

United States District Court
Southern District of Texas
FILED

AUG 13 2021

Nathan Ochsner
Clerk of Court

**DAVID C. LAIRD (INDIVIDUAL AND OFFICIAL CAPACITY), JAIME RODRIGUEZ (INDIVIDUAL AND OFFICIAL CAPACITY), CHIEF OF POLICE CLAUDINE O'CARROLL, (OFFICIAL CAPACITY) CITY OF SOUTH PADRE ISLAND, TEXAS, (POLITICAL SUBDIVISION)**

**DEFENDANTS**

**MORE DEFINITE STATEMENT OF ALL CLAIMS**

SYNOPSIS

While recording a video for public dissemination on his YouTube channel, Plaintiff was lawfully exercising his first amendment right to record the public actions of on-duty police officers. Plaintiff began passing through an unmarked, unpainted, unrestricted, unobstructed, openly accessible public breezeway, not bearing posted or painted directives, leading from the public sidewalk on Venus St. Before completing his passage through the public breezeway, Plaintiff was stopped and arrested by Police Officer David Laird (Defendant Laird), had his property seized, was physically restrained in handcuffs, was searched, and was confined to the front of a patrol vehicle, and told by the arresting officer that he would be charged with "failure to ID". (See Texas Penal Code 38.02). All without resisting, and despite no officer present, articulating then or in the future, what reasonable, articulable suspicion, based on objective facts, Defendant Laird and the other officers who assisted him, acted upon, which indicated to them that a <u>crime</u> had been, was being, or was about to be committed by Plaintiff.

ARREST VS. DETAINMENT

Plaintiff will show that his detainment was unlawful using the Terry v. Ohio standard claimed by the Defendants, and that his arrest was therefore unlawful. In their Rule 12 Motion to Dismiss (denied 07/21/21), Defendants claimed their actions followed Terry v. Ohio, and that the seizure of the Plaintiff was simply an "investigative detention"; but Plaintiff applies the same standard as the Supreme Court in Brown v. Texas (while citing Terry), in which the actions taken by Defendant Laird constitute an arrest under the 4th amendment. Plaintiff was stopped, had his path blocked, his property seized, was handcuffed, and was advised that his arrest was forthcoming; in that he would be charged with "failure to ID". Upon being advised by a police officer of a criminal charge against them, an already handcuffed person of average reasoning would believe that they were under arrest and about to be incarcerated. The restraint in handcuffs, physical aggression, search, and other actions of Defendant Laird, contributed to Plaintiff's belief that he was under arrest. According to Plaintiff's knowledge, training and experience, a "detainment" only occurs when an officer informs a person that they are detained before or at the time of any enforcement actions, to include placing them into handcuffs; and the detained person is then questioned. The quick and forceful way the Plaintiff was grabbed and handcuffed, and then pulled away from his phone and pushed towards a patrol vehicle, with no

mention of a detainment at the time of the seizure, led Plaintiff to interpret the seizure of his person as an arrest and not simply an "investigatory detention" as claimed by Defendants.

The following summarizes the pertinent findings in Terry v. Ohio and constitutes the basis for Plaintiff's legal argument:

**Terry v. Ohio, 392 U.S. 1 (1968)** *Held that:*

1.The Fourth Amendment right against unreasonable searches and seizures, made applicable to the States by the Fourteenth Amendment, "protects people, not places," and therefore applies as much to the citizen on the streets as well as at home or elsewhere. Pp. 8-9.
4. The Fourth Amendment applies to "stop and frisk" procedures such as those followed here. Pp. 16-20.
(a) Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person within the meaning of the Fourth Amendment. P. 16.
(b) A careful exploration of the outer surfaces of a person's clothing in an attempt to find weapons is a "search" under that Amendment. P. 16.

DEFENDANT DAVID LAIRD

In the bodycam video of the incident, (exhibit not yet marked) when asked by his supervisor why Plaintiff had been handcuffed, the Defendant officer replied, "he was back here recording the units". When asked by Plaintiff what the officer's reasonable articulable suspicion was that Plaintiff was committing, had committed, or was about to commit a crime, the Defendant officer replied, "you were back here recording us". Recording the public actions of public servants while in the performance of their public service is not a criminal offense; and further, it is protected by the 1st amendment to the United States Constitution and has been ruled a Constitutionally protected right by the 5th circuit. The stopping, restraint in handcuffs, detention, confinement, search, and demand for ID of the Plaintiff (all of which constitute an arrest under the 4th amendment to the U.S. Constitution) was therefore not reasonable and was not based on articulable facts pointing to a crime. In response to Plaintiff's interrogatory, requesting an explanation for Defendant Laird's decision to stop, restrain in handcuffs, search, and confine to the front of a patrol vehicle while demanding ID and stating that Plaintiff was to be arrested for failure to ID, Defendants provided the following answer:

*"Officer Laird has indicated that he detained Plaintiff due to his reasonable suspicion that criminal activity could be afoot based on observing Plaintiff hovering in an area very close to the PD rear sally port in an area very infrequently approached by any member of the public, which he believed arguably constituted trespassing or a safety threat. Based on observing him holding his phone up in this area so close to the PD rear entrance and to police officers and then Plaintiff's refusal to simply identify what he was doing there, Officer Laird exercised his discretion to detain the Plaintiff to investigate his suspicions as to who he was and what he was doing so close to the police station rear-entrance, either filming or doing something else with his phone. Plaintiff's location and proximity to the PD rear entrance, police officers shift changes and PD vehicles, his use of his phone, and his refusal to simply identify himself or whether he needed help, led to Officer Laird's decision to briefly detain him for investigative purposes."* – ("Dave v SPI; Def City's Responses to Plaintiff's Rogs" Page 8, Interrogatory 19).

These statements by the officer regarding the presence of the Plaintiff in an area not frequented by the public, being cause for suspicion, do not meet the standard of reasonable suspicion as determined by Terry v. Ohio; therefore, the decision by the Defendant officer to stop and handcuff Plaintiff absent objective facts pointing to a crime was not reasonable and was an excessive amount of force not equal to or in an amount sufficient to overcome that of Plaintiff's, which was no force at all.

Note: this strange list of non-criminal acts (minus trespassing which did not occur) does not establish reasonable suspicion of a crime. It is simply a list of lawful activity stated in a manner which attempts to cast a nefarious shadow on the legal, lawful, constitutionally protected actions of the Plaintiff in this case.

Plaintiff was walking and recording with his cellphone, and at no time prior to his arrest did these actions escalate to a criminal offense or threatening behavior; as acknowledged by Detective Raul Hinojosa in the bodycam video provided by the Defendants, who questioned Defendant Laird as to why Plaintiff had been handcuffed for "just recording". Further, the Supreme Court ruled in Brown v. Texas, that the actions of a person who was found leaving a high-crime area, where drug sales and other criminal activities frequently occurred, and who would not answer officer's questions or identify himself, **did not** justify the detention or arrest by the officers, as those facts **did not** meet the reasonable suspicion standard of Terry v. Ohio, and were not enough to justify a seizure of the Plaintiff.

To date, the Defendants have not provided any evidence of an actual crime committed by Plaintiff before being stopped and handcuffed. To date, the Defendants have never made any statements that point to the existence of an actual crime, or the reasonable articulable suspicion of an actual crime, based on objective facts. To date, the Defense has not made any arguments that point to reasonable articulable suspicion, based on objective facts or inferences, that an actual crime had been, was being, or was about to be committed by the Plaintiff. The mere suspicion of the officer or a "hunch" not substantiated by objective facts, does not create reasonable suspicion for a detainment. (Terry v. Ohio). Therefore, because a detainment was unlawful, which has a lower standard of proof than an arrest, an arrest was unlawful. Plaintiff filed his lawsuit for the unlawful arrest and detainment by the Defendant officer, and his actions the result of a failure to train by the Chief of Police and the City of South Padre Island.

TRESPASSING

Defendant now categorizes Plaintiff's presence as "arguably constituted trespassing" or a "safety threat" - (which is not a criminal offense). And as previously plead by Plaintiff in his response to Defendant's Rule 12 Motion to Dismiss, trespassing cannot occur on unmarked public property such as an open breezeway behind a police station that does not have any signs posted. Additionally, Plaintiff was not allowed to leave the property prior to his arrest, which, if allowed to continue his lawful activity, is exactly what he would have done. Instead, the Defendant officer stood in front of and blocked the path of Plaintiff. Defendant Laird thus accused Plaintiff of "trespassing" while simultaneously preventing Plaintiff from departing, which reveals the true intentions of the Defendant. Unless the public breezeway had restrictive signage, painted, or posted restrictive symbols, or physical barriers preventing access, there can be no such claim of trespassing through a public street, neither the suspicion of such a claim of trespassing.

SAFETY THREAT

A "safety threat" is highly subjective terminology which, absent objective facts pointing to an actual threat, does not meet the legal standard required for establishing reasonable articulable suspicion, based on objective facts, alluding to a crime, and does not justify a Terry Stop, Arrest or Detainment.

The Defendant's attempt at retroactively establishing reasonable suspicion goes so far, so as to use Plaintiff's absolute right not to speak to police, as a reason to detain; and demonstrates a practice or policy of seizing members of the public for exercising constitutional rights.

***"and his refusal to simply identify himself or whether he needed help, led to Officer Laird's decision to briefly detain him for investigative purposes."***

Texas Penal Code 38.02: Failure to ID is a secondary charge which accompanies a lawful arrest for a criminal offense based on probable cause; and there is no Texas Penal Code for "not needing help".

Defendants here admit that it was Plaintiff's act of exercising his right to remain silent and not to speak to police, his right not to have to obtain permission from the government prior to exercising his rights, and his right to be secure in his bodily integrity to be left alone to continue his lawful activity, which they believe granted the legal authority upon which they acted against him, under the color of law.

Defendants' admission of acting (thus an admission of a practice or policy of acting) upon their belief that a person exercising their Constitutionally protected rights, specifically grants them the legal authority to infringe upon the freedoms of said person, prevents Defendants from claiming qualified immunity; and additionally shows a custom or policy in which Defendants confront members of the public for exercising their constitutional rights, when the expression of one or more of those rights by a citizen upsets them or makes them angry; (See video of Plaintiff's arrest): and based on said emotions, Defendants believe they have the legal authority to stop, grab, take the property of, restrain in handcuffs, confine, search, and demand ID from any person exercising constitutional rights.

The participation of 4 Officers in the unlawful arrest of Plaintiff and the complacency of the 2 Detectives who themselves then engaged in multiple policy violations, demonstrates the custom or practice of playing "follow the leader" instead of adhering to Department Policy, Texas State Law, and the United States Constitution.

The above quoted statement regarding the Plaintiff's refusal to ***"simply identify himself or whether he needed help"***, leading to Defendant Laird's "***decision to detain***" falls so glaringly short of the Terry standard for a detainment, that it is a death knell to any qualified immunity claims the Defendants may attempt to pursue; it is also a testament to the severe lack of training that exists at this police department.

The protections of the 4th amendment against all unreasonable searches and seizures are unquestionably well-established and have been for over 200 years. The fact that armed agents of the government, with a license to kill, are patrolling the streets of South Padre Island, while remaining grossly ignorant of the Constitutional limits to their authority, should be cause for extreme concern by the citizens and visitors to the city.

Putting police officers out on patrol who believe that the appropriate response to a citizen walking through an open area of the police department (that the citizens paid for), while recording their public servants and expressing a 1st amendment protected opinion in public, is to physically accost them, take their personal property without a warrant, seize and restrain them in handcuffs, and demand that they identify themselves, is terrifying; and constitutes an actual, clear and present "safety threat", not an after-the-fact vaguely-plead one.

And for the officer to state that the trigger to said actions was the fact that Plaintiff would not respond as to **"whether he needed help",** is outrageous; and should be cause for all residents of the City of South Padre Island to demand, that 1st and 4th amendment training be immediately provided to all City of South Padre Island employees; from the Mayor, to the Chief of Police, and all officers of the department; to include clerical staff.

How many other citizens have been arrested by this officer and this police department for "***not stating whether they needed help***?"

VIDEO EVIDENCE CONTRADICTS DEFENDANT'S CLAIMS

The video evidence of this incident directly contradicts the claims by the Defendants. The video evidence proves that at no time before his arrest did Plaintiff approach the rear sally port of the police station. The video evidence proves that at no time prior to his arrest was Plaintiff "hovering" in an area close to the rear sally port entrance. Instead, Plaintiff is clearly visible walking through the breezeway while maintaining a constant forward pace towards the public street on the opposite side of the breezeway; and at no time prior to his arrest does Plaintiff change direction and begin approaching the rear sally port entrance. He does not approach the building and he does not approach any of the officers present. These facts are supported both by Plaintiff's video of the incident and by the bodycam footage released by the Defendants.

If the Defendant officer was concerned about a possible threat posed by Plaintiff, (despite Plaintiff at no time making any verbal threats or moving towards any officers), the officer should have kept his distance. Stepping directly in the path of an unknown person and standing within just a few inches of an unknown person before later claiming that the person posed a "safety threat", further reveals the true intentions of the Defendant.

Despite video evidence to the contrary, Defendants continue to repeat a narrative of the Plaintiff approaching the officers or trying to gain access to the sally port; presumably to cast a shadow of suspicion and malice on the lawful actions of a citizen whom they unlawfully arrested for using a cellphone to record them. They further use emotionally charged buzzwords such as "**trespassing**" and "**safety threat**" (presumably to imply unlawful conduct), "**holding his phone**" and, "**doing something else with his phone**" instead of recording, which is what Plaintiff was doing there. And the common practice of using a cellphone as a camera is readily apparent to a person of average reasoning; including Defendant Laird, who admitted to stopping and "detaining" Plaintiff for this reason.

It was arguably Defendant Laird (not the Plaintiff) who created a "safety threat" by stepping directly in front of Plaintiff and stealing his property. It was Defendant Laird who prevented Plaintiff from leaving the area by blocking his path. Thus, it was Defendant Laird who created the scenario that he now uses to attempt to justify his actions. Allowing Plaintiff to continue his exit from the property would have prevented both the "safety threat" to Defendant Laird and the "trespassing" Defendant's attempt to use to justify their unlawful acts. These facts reveal the true intention of the Defendant officer in taking Plaintiff's phone, restraining him in handcuffs, separating him from his property, and confining him to the front of a patrol vehicle: Plaintiff told the officers to "get back to work".

DEFENDANT JAIME RODRIGUEZ

Upon being compelled through Discovery to release the police bodycam video of this incident, lawfully requested 8 and a half months ago by email to the City and then via the Texas Public Information Act by Plaintiff, but withheld by the City, the identity of Defendant "John Doe" is now known. He is Detective Jaime Rodriguez.

The following acts were carried out by Defendant Rodriguez under the color of state law, in violation of federal laws prohibiting state officers from interfering with, intimidating, or harassing citizens exercising their Constitutionally protected rights. (18 U.S.C. 241 & 242) and he is liable under (42 U.S. Code § 1983).

Harassment, physical and verbal intimidation, and criminal stalking; without identifying himself as law enforcement; other than stating that he would arrest me, and telling me to leave, in violation of my Constitutional rights under the 1st amendment. Defendant Rodriguez was wearing a badge that was identical in appearance to that worn by police officers, had a visible holster on his right hip with the outline of a pistol grip under his shirt, and only after much insistence by Plaintiff, eventually identified himself only as "Detective", after, not before engaging in all the acts alleged heretofore by the Plaintiff.

1. By lying to Plaintiff that there was a law against insulting police officers, Defendant Rodriguez violated/and or attempted to violate, deter, prevent, or interfere with the 1st amendment right of Plaintiff to freedom of speech. This act was carried out by Defendant Rodriguez under the color of state law.
2. Telling Plaintiff to "get out of here before I arrest you" was a violation of Plaintiff's 1st amendment right to assemble and to record the actions of on-duty police officers. And his 4th amendment right to be free from unnecessary searches and seizures, and to be secure in his bodily integrity. This act was carried out by Defendant Rodriguez under the color of state law.
3. Defendant Rodriguez's threat to arrest Plaintiff for expressing his constitutionally protected right to free speech, violated/and or attempted to violate, deter, prevent, or interfere with the 1st amendment right of Plaintiff to express his opinions in public. This act was carried out by Defendant Rodriguez under the color of state law.
4. The physical harassment and intimidation of Plaintiff by Defendant Rodriguez, by physically advancing towards Plaintiff, (while armed), forcing Plaintiff to move backward or stand his ground, without issuing any verbal directives or commands, and absent any legitimate law enforcement purpose, violated Plaintiff's constitutionally protected 1st amendment right to assemble and to petition the government for

a redress of grievances, and violated Texas Penal Code-42.072 (Harassment and Stalking). This act was carried out by Defendant Rodriguez under the color of state law.

5. The demand to produce identification, absent a violation of the law, violated the 4th amendment right of Plaintiff to be secure in his papers and effects and to be free from all unreasonable searches and seizures. This act was carried out by Defendant Rodriguez under the color of state law.
6. The act of menacing and stalking Plaintiff by following him in a vehicle as Plaintiff attempted to depart the property and return home, violated Texas State Laws on harassment and stalking (Texas Penal Code-42.072), and Federal Law which prohibits state officers from interfering with, intimidating or harassing any person who is exercising their constitutionally protected rights (18 U.S.C. 241 & 242); and further prevented Plaintiff from continuing to exercise his constitutionally protected right to freedom of speech, freedom of the press, the right to assemble, and the right to petition the government for a redress of grievances. This act was carried out by Defendant Rodriguez under the color of state law.

Plaintiff incorporates all previous allegations against Defendant "John Doe" against Defendant Detective Jaime Rodriguez.

On account of the above pleading set forth, and in addition to the allegations made in Plaintiff's original complaint, Plaintiff now demands judgment from Defendants in the following amounts: Fifty thousand dollars in actual damages, and two hundred and fifty thousand dollars in punitive damages.

SUMMARY

Refusing to speak to the police is a constitutionally protected right under the 4th, 5th and 6th amendments to the U.S. Constitution and **does not** create reasonable articulable suspicion or legal authority for police to seize, handcuff, arrest, detain, physically accost, search, and demand ID from any person. Walking is not a crime and does not create reasonable articulable suspicion or legal authority for police to seize, handcuff, arrest, detain, accost, search, and demand ID from any person. Recording police with a cellphone camera is not a crime and does not create reasonable articulable suspicion or legal authority for police to seize, handcuff, arrest, detain, accost, search, and demand ID from any person. Entering and passing through an unmarked, fully open, and fully accessible breezeway is not a crime, (regardless of whether members of the public normally enter or not, as absent any signage, the area is open to the public) and does not create reasonable articulable suspicion or legal authority for police to seize, handcuff, arrest, detain, accost, search, and demand ID from any person; unless these acts are accompanied by objective facts alluding to a crime. **"Using his phone"**, **"not simply identifying himself"**, and all other acts by the Plaintiff, do not establish reasonable articulable suspicion based on objective facts, alluding to a crime; according to the U.S. Supreme Court in Brown vs. Texas, not one of the acts by the Plaintiff either by itself or together with all other acts by Plaintiff, constituted a crime or evidence of a crime.

*"The application of the Texas statute to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe that appellant was engaged or had engaged in criminal conduct. Detaining the appellant to require him to identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be "reasonable." Brown v. Texas, 443 U.S. 47 (1979).*

By his own admission, Defendant Laird "detained" Plaintiff and required him to identify himself absent reasonable suspicion that Plaintiff was engaged in or had engaged in criminal conduct - **the same pled scenario ruled by the U.S. Supreme Court to have violated the Fourth Amendment rights of the appellant in that case.**

Judgment should be awarded to Plaintiff.

## DAMAGES AND PRAYER FOR RELIEF

In his response to Defendant's first Rule 26 Discovery Request, Plaintiff lists all damages extensively and in great detail. Plaintiff has not included that list here, but can file it separately as a supplement to this filing if so requested by the Court. Plaintiff has previously asserted that his damages were for humiliation, continued mental and emotional trauma from being arrested for the first time in his life despite not committing a crime, and for the continued mental anguish of spending over 8 months trying to compel the City to identify Defendant Jaime Rodriguez, and Plaintiff's fear that Defendant Rodriguez would remain unnamed and his unlawful actions concealed by the Defendant's refusal to obey State Law and identify him as per their own written policy. Plaintiff has not been able to continue his activism due to an extreme fear of being unlawfully arrested again, despite not committing a crime; and has just recently begun to attempt to resume what was previously, a regular and frequent act of lawfully recording on-duty police officers, publicly funded government buildings, and other matters of public interest related to the first amendment to the U.S. Constitution, for public dissemination on his YouTube channel. Plaintiff lost many hours of employment and had to cease employment for an extended period to keep up with the demands of filing a Pro Se Federal Lawsuit against an entire City and Police Department, and to respond to the motions and challenges by the Defendants in opposition to his prayers for relief from the Court; which continue to be filed by the Defendants; arising from damages caused by the Defendants.

WHEREFORE, Plaintiff, BERI DAVE, demands judgment and prays for the following relief, jointly and severally, against all Defendants:

a. Full and fair compensatory damages in the amount of fifty thousand dollars to be awarded by a jury;

b. Punitive damages in the amount of two hundred and fifty thousand dollars to be awarded by a jury against all individual capacity defendants or the City if allowed by law;

c. Reasonable legal fees and costs of this action; (included in actual damages);

d. Immediate 1st and 4th amendment training for all City of South Padre Island employees, as a deterrent to future Constitutional rights violations, and a prevention of further civil suits against the department; which is a burden upon the taxpayers who pay the salaries of their public servants and expect their public servants to know and to obey the law; just as they, the residents and visitors to the City of South Padre Island are required to.

e. Any such other relief as appears just and proper.

Additional citations supporting Plaintiff's assertions from Terry v. Ohio and other similar cases:

*United States v. Drinkard, 900 F.2d 140, 143 (8th Cir. 1990)("[a] limited investigative detention of a citizen by a government agent is illegal unless that agent has reasonable suspicion that the citizen has committed or is about to commit a crime" (citing Terry v. Ohio, 392 U.S. 1 (1968)); United States v. Ninety One Thousand Nine Hundred Sixty Dollars, 897 F.2d 1457, 1461 (8th Cir. 1990) ("the investigatory stop must be supported by reasonable, articulable suspicion of criminal activity" (citing Terry, 392 U.S. at 21)); United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir. 1989) ("[a]n officer may make an investigatory stop if he is aware of specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity" (citing United States v. Cortez, 449 U.S.*

Signed: [signature] On this, the: 12th Day of: August 2021


FROM:
Benji Dave
3213 Cary Palm Dr N
Harlingen, Texas
78552
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®
7021 0350 0000 3219 4368
UNITED STATES POSTAL SERVICE
1000
78520
U.S. POSTAG
FCM LG ENV
HARLINGEN
78550
AUG 12, 21
AMOUNT
$5.0
R2304N1185
TO:
Nathan Ochsner
Clerk of Court
600 E Harrison St.
#101 Brownsville, TX
78520
MAIL
United States District Court
Southern District of Texas
AUG 13 2021
RECEIVED
Nathan Ochsner, Clerk of Court
Utility Mailer
10 1/2" x 16"
P