United States District Court
Southern District of Texas
**ENTERED**
November 30, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| BERI DAVE, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 1:20-cv-209 |
| | § | |
| DAVID C. LAIRD, ET AL., | § | |
| Defendants | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff Beri Dave's pro se "Complaint for Violations of Civil Rights" and his "More Definite Statement of All Claims" (hereinafter, Dave's "Complaint" and "Statement of Claims"). Dkt. Nos. 1 and 54. On August 17, 2021, the Court received a "Response in Opposition to Plaintiff's '[]More Definite Statement' and 'Motions to Dismiss Pursuant to Rules 8 and 12'" (hereinafter, Defendants' "Motion" or "Motion to Dismiss") filed by Defendants City of South Padre Island, David C. Laird, and Claudine O'Carroll. Dkt. No. 55. For the reasons provided below, it is recommended that the Court **GRANT** Defendants' Motion in part. Specifically, it is recommended that the Court **DISMISS,** with prejudice, all claims against the Defendants which are based upon the conduct of David C. Laird (hereinafter, "Laird" or "Officer Laird").[1]

---

[1] In his Statement of Claims, Dave seeks to add claims against Detective Jaime Rodriguez, an individual he previously identified in his Complaint as "Defendant John Doe." Dkt. No. 54 at 1, 5-6. Defendants claim that Dave has not properly named or served Rodriguez (*see* Dkt. No. 55 at 1, note 1), but they have not shown this to be the case. Thus, as Rodriguez has not made an appearance in this action, and Defendants have not moved to dismiss on his behalf (*see* Dkt. No. 55 at 1, note 1), the Court should decline Defendants' request to dismiss this entire lawsuit. *See* Dkt. No. 55 at 14 (requesting that the Court "dismiss this lawsuit"). Instead, the Court should only dismiss the claims against Officer Laird and the claims against Defendants based upon the conduct of Officer Laird.

## I.  Jurisdiction and Venue

The Court has federal question subject matter jurisdiction because Dave has alleged violations of 42 U.S.C. § 1983.  *See* Dkt. No. 1 at 3, 7, 5, 10; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Venue is also proper in this District because the alleged events giving rise to Dave's lawsuit occurred here.  *See* Dkt. No. 1 at 7-19 (describing events and omissions occurring in Cameron County, Texas); 28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred").

## II.  Background

Dave filed his Complaint in this Court on December 15, 2020.  Dkt. No. 1.  The Court granted his second "Application to Proceed in District Court without Prepaying Fees or Costs" (hereinafter, "In Forma Pauperis Application" or "IFP Application") on January 5, 2021.  Dkt. No. 12.[2]  After striking several of Dave's subsequent submissions which violated the Local Rules, the Court ordered Dave to provide a more definite statement of his claims.  *See* Dkt. Nos. 29 and 48 (striking Dkt. Nos. 27, 28, and 47 for failure confer with opposing counsel and otherwise comply with the Local Rules); Dkt. No. 51 (ordering Dave to file a more definite statement of his claims).  Dave filed his

---

[2]  The Court denied Dave's first application to proceed in forma pauperis because he failed to complete the application.  *See* Dkt. Nos. 2 and 7.  The Court granted Dave's second IFP Application based upon his claims that: (1) his net earnings for the 12 months preceding the filing of his Complaint were approximately $14,372; (2) he spent more than half of this amount on bills; (3) he spent an additional $150–$250 per month, depending on what he was able to earn, on his family's mortgage and expenses as rent; (4) he has debt from a loan, student loans, and credit cards; and (5) he will likely owe back taxes and fees for the year of 2019, unless they are offset by government stimulus.  Dkt. No. 11 at 1-2.

Statement of Claims on August 13, 2021.  Dkt. No. 54.

Dave's Complaint, supplemented by his Statement of Claims, attempts to allege causes of action against: (1) the City of South Padre Island, Texas; (2) Officer Laird, in his individual and official capacity; (3) Detective Jaime Rodriguez in his individual and official capacity; and (4) Chief of Police, Claudine O'Carroll, in her official capacity.  Dkt. No. 1 at 1-2; Dkt. No. 54 at 1.  Dave states that Officer Laird, Claudine O'Carroll, and the City of South Padre Island are liable to him under 42 U.S.C. § 1983 for violating his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Dkt. No. 1 at 3, 7, 10-19; Dkt. No. 54 at 1-7.  He claims that, due to the actions of these Defendants, he was unlawfully arrested by Officer Laird while making a video on his mobile phone for his YouTube channel.  He contends that during his arrest, Office Laird took his phone from him, did not allow him to continue filming, and unlawfully asked him to identify himself.  Among other things, he also states that Defendant Jaime Rodriguez (hereinafter, "Detective Rodriguez") criminally stalked him after he left the premises of the South Padre Island Police Department (hereinafter, "SPIPD").  Dkt. No. 1 at 8-19; Dkt. No. 54 at 1-6.[3]

---

[3] As noted above, the Court will not address Dave's purported claims against Detective Rodriguez at this juncture and will, instead, only address Defendants' liability for Officer Laird's conduct. However, the Court construes Dave's Statement of Claims as adding claims against Officer Laird in his individual capacity because the Court specifically directed Dave to clarify whether he was suing Laird in his individual capacity, his official capacity, or both.  *See* Dkt. No. 51 at 1-3. Defendants have not moved for the dismissal of Dave's claims against Officer Laird in his individual capacity.  Dkt. No. 55 at 1.  Still, this Court may dismiss Dave's individual capacity claims against Officer Laird sua sponte because Dave is proceeding in forma pauperis. *See Malone v. Campbell*, No. 3:17-CV-00707, 2017 WL 6811795, at *2 (W.D. La. Dec. 11, 2017), *rec. adopted*, No. 3:17-CV-00707, 2018 WL 297600 (W.D. La. Jan. 4, 2018) (collecting cases and noting that, under 28 U.S.C. § 1915(e)(2)(B), a district court may dismiss, sua sponte, a complaint filed by a prisoner or non-prisoner proceeding in forma pauperis if the complaint is frivolous or fails to state a claim ); *Newsome v. E.E.O.C.*, 301 F.3d 227, 231-33 (5th Cir. 2002) (applying § 1915(e) to a non-prisoner); *Baugh v. Taylor*, 117 F.3d 197, 199–200 (5th Cir. 1997) (noting the applicability of § 1915 to suits brought by "prisoners and nonprisoners alike").

Dave further asserts that Defendants Claudine O'Carroll and the City of South Padre Island (hereinafter, "Chief O'Carroll" and "the City") violated his rights by failing to adequately train and supervise Officer Laird.  Dkt. No. 1 at 18-19; Dkt No. 54 at 7.  He alleges that this failure has caused him continued emotional and mental trauma.  Dkt. No. 1 at 17-19; Dkt No. 54 at 7.  Due to this trauma, he contends that he has only recently begun "to attempt to resume what was previously, a regular and frequent act of lawfully recording on-duty police officers, publicly funded government buildings, and other matters of public interest related to the first amendment to the U.S. Constitution, for public dissemination on his YouTube channel."  Dkt. No. 54 at 7.  He asserts that he has "lost many hours of employment and had to cease employment for an extended period to keep up with the demands of filing a Pro Se Federal Lawsuit[.]"  *Id*.[4]  Dave seeks his legal fees and costs, $50,000 in compensatory damages, and $250,000 in punitive damages against all Defendants, or the City.  *Id.*  He additionally asks that the Court order training for all City employees, "as a deterrent to future Constitutional rights violations" which burden "the taxpayers who pay the salaries of their public servants and expect their public servants to know and obey the law[.]"  *Id.*

Defendants filed their Motion to Dismiss on August 17, 2021.  Dkt. No. 55.  Defendants assert that Dave has failed to follow the Court's instructions when filing his Statement of Claims.  *Id*. at 1-4.[5]  Defendants also contend that Dave's lawsuit should be

---

[4]  Dave avers that in the twelve months prior to filing his Complaint, he made approximately $1,171.94 in advertising revenue from "Google Ad Sense" for his YouTube videos.  Dkt. No. 11 at 1.

[5]  Defendants' assertion that Dave did not follow the Court's instructions when submitting his Statement of Claims is correct.  However, the Court need not address their Rule 8 arguments for dismissal on this ground.  *See* Dkt. No. 55 at 1-4 (citing FED. R. CIV. P. 8(a) and(d)).  Defendants' arguments overstate their own alleged lack of notice and are otherwise unsupported by authority applicable to pro se pleadings.

dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because he has failed to state a claim. *Id*. at 4-14. Defendants seek costs of court and any other relief that they are entitled to receive in law or equity. *Id*. at 14. Dave has not filed a Response to Defendants' Motion to Dismiss.

### III.  Legal Standards

**A.  FED. R. CIV. P. 12(b)(6).**  Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a). *Richter v. Nationstar Mortgage, LLC*, Civil Action No. H–17–2021, 2017 WL 4155477, at *1 (S.D. Tex., 2017). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory[.]" *Id*. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)). "Factual allegations must be enough to raise

a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* Although the Supreme Court in *Twombly* stressed that it did not impose a probability standard at the pleading stage, an allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

**B. Local Rule 7.4**. Local Rule 7.4 provides that a party's failure to respond to a motion "will be taken as a representation of no opposition." *See* Rule 7.4 of the Local Rules of the United States District Court for the Southern District of Texas. *See also* Rule 6(C), Civil Procedures of Judge Rolando Olvera ("Failure to respond to an opposed motion will be taken as a representation of no opposition."). Nevertheless, a district court may not grant a motion to dismiss simply because the plaintiff has failed to respond. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012); *Guidry v. Wells Fargo Bank, N.A.,* No. CV H-16-2618, 2017 WL 58845, at *1 (S.D. Tex. Jan. 4, 2017). The court must still assess the legal sufficiency of the plaintiff's claims to determine if dismissal is warranted. *Id.*

**C. 42 U.S.C. § 1983**. Section 1983 of Title 42 does not grant substantive rights. Instead, it provides a vehicle for a plaintiff to vindicate those rights that are protected by the United States Constitution and other federal laws. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Specifically, § 1983 provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and

laws" of the United States by a "person" acting under color of state law.  *Id.* at 315.  A plaintiff seeking § 1983 relief must show: (1) that the conduct complained of was committed under color of state law, and (2) that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)).

## IV.  Discussion

Dave asserts that Officer Laird violated his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Dkt. No. 1 at 3, 7, 10-19; Dkt. No. 54 at 1-7.  He also states that Chief O'Carroll and the City violated his rights by failing to adequately train and supervise Officer Laird.  Dkt. No. 1 at 18-19; Dkt No. 54 at 7.  For the reasons provided below, Dave's claims against Chief O'Carroll, the City, and Officer Laird all fail because Dave has failed to state a claim against Officer Laird in either his official or individual capacity.

**A.  Dave's Written Allegations**.  In support of his claims, Dave makes the following factual assertions:

**(1)** He was arrested while making a video to "record the public actions of on-duty police officers."  Dkt. No. 54 at 1.  He began filming SPIPD police officers at approximately 6:30 p.m. on October 14, 2020.  Dkt. No. 1 at 8.  He was filming with his mobile phone while walking through a "public breezeway" behind the SPIPD.  Dkt. No. 54 at 1.  This breezeway had "no posted signs, markings, physical barriers, or any other visual indications that access . . . was prohibited or restricted, or that the breezeway led to an area that [was] off limits to the public or to a sensitive or secure area."  Dkt. No. 1 at 8.

**(2)**   While he was filming, two police officers repeatedly asked him if he needed help.  He responded, "No, you can go back to work, that's what I pay you to do."  Dkt. No. 1 at 8.  Officer Laird then approached and stopped in front of him "without identifying himself as a police officer, or stating his agency or badge number[.]"  *Id.*  Officer Laird told him that he was trespassing.  He questioned Officer Laird's statement based on his own belief that he was on property paid for by the public.  Officer Laird repeated that he was trespassing.  He then asked for Officer Laird's name and badge number.  *Id.*  Officer Laird took his phone, threw it on the ground, grabbed him, and handcuffed him with his wrists behind his back.  *Id.* at 9.

**(3)** Officer Laird asked him to provide his I.D.  He did not do so, and instead tried to speak into his phone which he believed was still recording from the ground.  Dkt. No. 1 at 9.  Officer Laird moved him away from his phone "by lifting him up by his left shoulder and dragging him forward approximately 20 feet and then pushing him quickly and violently towards the front of a police cruiser[.]"  *Id.*  Officer Laird did this while stating, "'Get over here.  We're talking to you.'" *Id.*  When he asked why he had been arrested, Officer Laird initially did not answer, but then stated, "you're about to be under arrest for failure to ID."  *Id.*

**(4)** Officer Laird directed another officer to "'Search him for weapons[.]'"  Dkt. No. 1 at 9.  The officer complied and searched his outer clothing and pockets.  After Officer Laird continued to demand that he present identification, he stated that he wanted a supervisor and would not answer any questions without an attorney.  Officer Laird became "visibly upset," raised his voice, and demanded that he produce identification.  *Id.* "A few minutes later," another officer approached and told Officer Laird to release him. This officer allowed him to retrieve his phone and told him he was free to go.  *Id.*  He

replied by saying that, if he was free to go, then he was also free to stay.  He then proceeded to stay and demand that a supervisor come speak to him.  He also asked all officers present to identify themselves.  Officer Laird identified himself, but all other officers ignored him. *Id.*

**B. Dave's Video Evidence**.  With his Complaint, Dave has submitted the video that he took on his phone during his alleged arrest.[6]  In relevant part, the video depicts the following scenes:

**(1)** Dave is behind the camera walking down an alley that dead-ends behind the SPIPD.  The alley runs between the SPIPD and another building, such that the back of the SPIPD is in front of him to his right, the other building is in front of him to his left, and a barrier wall is directly in front of him.[7]  The area behind the SPIPD is relatively small.  The space contains the alley, some spaces under a carport for SPIPD officers to park their police vehicles, and a walkway running alongside the back wall of the SPIPD building.  Four police vehicles are parked under the carport and the remaining five parking spaces are empty.

**(2)** As Dave approaches the back of the SPIPD, he passes a police vehicle parked on the side of the alley next to the carport.  A uniformed female officer is standing behind the vehicle on a ramp leading up to an open sally port.  The officer is not looking in Dave's direction and appears to be talking to another officer in the sally port who is not visible.

---

[6]  Dave has submitted this video via a "jump drive" which contains several short videos.  *See* Dkt. No. 1-2 at 15 (listing exhibit contents).  To the extent relevant, the Court will discuss Dave's additional videos and exhibits below.

[7]  The building in front of Dave to his left resembles the SPIPD and Municipal Court buildings in design and coloring.  The large doors on the building suggest that it houses police or other city-owned vehicles.

There are two police vehicles in the sally port.  To the left of the sally port, there is a closed door with a keypad which appears to be an employee-only back entrance to the SPIPD.

**(3)** After walking by the uniformed female officer, Dave speaks for the benefit of his audience, referring to the female officer and saying, "This morning she was itching all over."  Dave then proceeds into the alley directly behind the carport where the four police vehicles are parked.  He appears to be no more than two to three yards away from the parked vehicles, so close that their license plate numbers are clearly visible.  A uniformed police officer is standing behind the open door of one of the police vehicles.  He appears to be putting something inside his vehicle on the passenger side.  Upon seeing Dave, he puts his COVID-protection mask on and begins walking towards Dave as Dave swings the camera in another direction.  Either this police officer, or another officer out of view of the camera, calls out to Dave, "Yes Sir? Sir, Sir, can I help you?" Dave does not respond.  Then another voice calls out, "How can I help you Sir."  Dave responds, "Ah . . . you can go back to work, that's what I pay you to do isn't it?"

**(4)** A uniformed, masked officer, who later identifies himself as Officer Laird, approaches Dave from the front.  Officer Laird says, "What's that?"  Dave says, "Go back to work."  Officer Laird says, "Sir, I'm sorry, no. You are trespassing right now and that's why I am asking you what you're doing?"  Dave challenges him in a belligerent, aggressive tone, "Trespassing on public property?"  Officer Laird says, "Yes. Yes. Yes."  Dave says, "Public property that I pay for?"  Officer Laird says, "Yes" and stops in front of Dave at approximately 54 seconds into the recording.

**(5)** At this point, Officer Laird is standing approximately two feet in front of Dave and Dave is holding his camera about 12 to 15 inches from Officer Laird's face.  Dave raises

his voice and says, "Can I have your name and badge number please?"  Officer Laird says

"Yes" and pushes the camera out of his face, stating, "I'll take this."

**(6)**  After Officer Laird takes Dave's phone, the screen goes black, but the

microphone is still recording.  A voice that sounds like Officer Laird's says, "We need to

find out who you are okay."   The sound of clinking handcuffs is then heard at

approximately 1 minute and three seconds into the recording.   Dave responds,

sarcastically, "I don't mind a lawsuit, I'll take the money."  A voice, which again sounds

like Officer Laird's responds, "Okay. Okay.  So, what are you doing back here?"  Dave

provides no audible response to this question.  The voice then states, "Your phone is

perfectly fine."  Dave then begins to yell over the officer to his phone, stating, "Hey guys,

hey guys, ah, go ahead and call South Padre Island . . . ." Dave's voice becomes inaudible

at this point, and a voice angrily asks, "Do you hear me? We are talking to you."  Some

muffled sounds follow this exchange, giving the impression that someone has picked up

Dave's phone.  Briefly, the screen shows Officer Laird walking a handcuffed Dave toward

the carport.  Officer Laird has Dave by the arm, but he does not appear to be dragging or

pushing him.

**(7)**  The screen goes black again and some muffled sounds are heard, suggesting

that someone is still in the process of moving Dave's phone.  Then the sky comes into view

and it appears that Dave's phone has been placed on a surface, facing upwards, some

distance away.  Very little is heard for a brief period.  Then, a voice sounding like Officer

Laird states, "I understand.  I understand."  Then, though some parts are inaudible,

Dave's voice can be heard aggressively stating, "First Amendments rights, Sir.  The

Constitution protects me.  I can film anything I can see in public.  Sir, there are no signs

posted here restricting me from coming back here Sir."

**(8)** At approximately 2 minutes and 39 seconds into the recording, Dave states: "Excuse me Sir, are you the supervisor?  You gonna let me go now?"  A voice responds, "Yeah, we'll let you go."  Dave then states, "I want to make sure my phone is still live . . . That phone is my record.  Can you give me my phone first?  I want my phone recording this.  That is my official record . . . give me my phone back . . . make sure it's turned on."  The screen then shows that the phone is being moved, presumably closer to Dave because he can then be heard saying loudly, "Let me see it.  Let me see the front please.  Ok."  The screen shows movement as the phone is being handled and turned around.

**(9)** Dave then demands, at 3 minutes and 11 seconds into the recording, "Please record them taking my cuffs off, Ma'am."  A female voice responds, "I'm not a cameraman Sir."  Dave again demands, "Please record them taking my handcuffs off."  The female voice says something inaudible and then states that she is holding his phone.  The sound of clinking handcuffs can be heard during this exchange at approximately 3 minutes and 22 seconds into the recording, suggesting that Dave's cuffs have been removed.

**(10)**  Dave next appears to direct a question to the officer removing his cuffs, stating, "Are you gonna calm the fuck down next time?"  A male voice, which sounds like Officer Laird's, responds in a subdued, dismissive voice, stating, "Oh I'm very calm. I'm always clam."  Dave replies rapidly and in a sarcastic tone, "No you're not.  You ran up and grabbed me, threw handcuffs on me, for a First Amendment protected activity.  You just got yourself in a world of shit."  At this point Officer Laird says, "I didn't know what you were doing back here for . . ."  Dave interrupts Officer Laird, and states, "You don't need to know what I'm back here for.  What did I do Sir?  What was your reasonable, articulable suspicion that I had committed a crime, was about to commit a crime, or was, or had just committed a crime?  What was it?"

**(11)** During this exchange, the female officer's voice can be heard telling Dave, "please keep your hands to yourself Sir." Officer Laird then continues, saying something which sounds like, "You were walking back here recording . . . ." Dave interrupts him again stating, "Oh, so that is against the law? Recording you is against the law? Did you hear that guys? This was Officer. Sorry, what's your name and badge number?" At this point, Dave regains possession of his phone and turns it around. Officer Laird comes into view and says, "David Laird." Dave says, "Sorry?" and Officer Laird repeats his name. Dave says, "Good, I'm going to get to know it very well, you'll be listed in the lawsuit."

**(12)** Dave then says, "Who else, please give your name and badge number. Don't run away you guys. They are escaping you guys. They're already starting the coverup. I need everyone's badge . . ." Then a voice states something that sounds like, "There is no coverup man, you are free to go." Dave says, "No. If I'm free to go then I am free to stay. I need your name and badge number Sir. I need your name and badge number. I need your name and badge number. I need the sergeant out here, I need the lieutenant out here, or I need the chief of police out here. You guys are not just going to walk away from this, I'm sorry. That officer fucked up big time. Where is he, where, where is he or she? Sir, you look like a sergeant, can you please come over here and talk to me? They are running away guys like a bunch of scared rats. Cuz they know they just stepped in it big time. Now they are just completely ignoring me. You guys are going to pay a lot for this. The City of . . . ah . . . the City of South Padre Island is gonna have to pay for this. Who's coming out to talk to me? Who's coming out to talk to me? They are all trying to ignore me you guys. They are all trying to ignore me. They know they just stepped in it big time. Who's coming out to talk to me Sir?"

**(13)** While Dave is yelling, an officer walking past Dave says, "What?"  Dave responds, "Who's coming out to talk to me?"  The officer says, "I don't know man, I just got here."  Dave says, "Ok, well you just got here.  Now you're in it too.  You should have stopped that officer.  I warned him.  I warned him that he was fucking up.  What's your badge number? Who's coming out to talk to me? Okay guys there it is, South Padre Island Police, they've all scattered like a bunch of scared rats because they know that they stepped in it big time.  I was grabbed, I was roughed up, ok, and ah, I had handcuffs thrown on me, and now they've all scatted.  I'm gonna go live."

**C.  Dave's Additional Submissions**.  Dave has submitted some additional documents, pictures, and videos along with his Complaint.  *See* Dkt. No. 1-1 and 1-2.  In order to argue that Officer Laird acted pursuant to unreasonable suspicions and unlawful motives, Dave has also incorporated Defendants' response to his nineteenth interrogatory into his Statement of Claims.  *See* Dkt. No. 54 at 2 (quoting "Dave v SPI; Def City's Responses to Plaintiff's Rags' Page 8, Interrogatory 19") (errors in original).  According to Dave, this interrogatory response provides as follows:

> "Officer Laird has indicated that he detained Plaintiff due to his reasonable suspicion that criminal activity could be afoot based on observing Plaintiff hovering in an area very close to the PD rear sally port in an area very infrequently approached by any member of the public, which he believed arguably constituted trespassing or a safety threat.  Based on observing him holding his phone up in this area so close to the PD rear entrance and to police officers and then Plaintiff's refusal to simply identify what he was doing there, Officer Laird exercised his discretion to detain the Plaintiff to investigate his suspicions as to who he was and what he was doing so close to the police station rear-entrance, either filming or doing something else with his phone.  Plaintiff's location and proximity to the PD rear entrance, police officers shift changes and PD vehicles, his use of his phone, and his refusal to simply identify himself or whether he needed help, led to Officer Laird's decision to briefly detain him for investigative purposes."

*Id.*  The Court has considered each submission provided by Dave with his Complaint, along with all information incorporated into his Complaint and Statement of Claims.[8]

**D.  Factual Discrepancies and Misleading Assertions**.  A review of Dave's submissions reveals some discrepancies between his factual allegations and his video evidence.  Accordingly, before addressing the specifics of Dave's legal claims, the Court will address the allegations Dave has made which are misleading and contradicted by his video evidence.  They are as follows:

**(1)** Dave repeatedly contends that he was arrested while filming in a "public breezeway" behind the SPIPD or an "open area of the police department[.]"  Dkt. No. 1 at 4, 8; Dkt. No. 54 at 1, 3, 4, 6.  He also states that this breezeway had "no posted signs, markings, physical barriers, or any other visual indications that access . . . was prohibited or restricted, or that the breezeway *led to an area that [was] off limits to the public or to a sensitive or secure area*."  Dkt. No. 1 at 8 (emphasis added).  These statements are misleading and not strictly true.  A "breezeway" is a "roofed often open passage connecting two buildings (such as a house and garage) or halves of a building."  *See* https://www.merriam-webster.com/dictionary/breezeway (last visited on November 18, 2021).  As his video make clear, Dave was filming in a dead-end alley behind the SPIPD, not a breezeway or "open area of the police department."

More critically, although there may have been no postings designating the area as off limits to the public, the alley Dave was filming in did *lead to an area* that was sensitive,

---

[8] In ruling upon a motion to dismiss under Rule 12(b)(6), courts may consider matters outside the pleadings without converting the motion into a Rule 56 motion if they are attached or incorporated into the complaint, or if they are referred to in the complaint and central to at least one of the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Rollerson v. Brazos River Harbor Navigation Dist. of Brazoria Cty. Texas*, 6 F.4th 633, 638–39 n. 3 (5th Cir. 2021).

secure, and off limits to the public.  Specifically, the alley led to: (1) an employee-only back entrance to the SPIPD; (2) an open sally port containing two SPIPD vehicles;[9] and (3) the SPIPD carport where four SPIPD vehicles were parked.  It is obvious from Dave's video that the sally port was not a public entrance.  Both his video and his pleadings also make clear that the carport was not for public use.  *See* Dkt. No. 1 at 8 (describing the alley as ending in "a parking area *for the South Padre Island Police Department*") (emphasis added).

**(2)** Dave claims that he was making the video to "record the public actions of on-duty police officers."  Dkt. No. 54 at 1.  This may be true, and the Court will presume it to be at this juncture, but Dave was clearly not filming the sort of "public acts" normally filmed by activists.[10]  *See Turner v. Lieutenant Driver*, 848 F.3d 678, 691–92 (5th Cir. 2017) (contrasting the filming of public acts like "a traffic stop" or "an arrest" with the plaintiff's filming of a police station and stating that officers observing the plaintiff could have reasonably suspected that he was stalking an officer, casing the station, "or otherwise preparing for criminal activity").  Dave's video begins at 6:30 at night and clearly focuses on the back entrances of the SPIPD and the SPIPD's vehicles.  The officers present on the scene when he began recording were not in the act of making an arrest, making a traffic stop, interacting with protestors, or otherwise performing tasks that could be described as particularly public in nature.

---

[9]  A sally port is defined as "a secure entryway (as at a prison) that consists of a series of doors or gates."  *See*  https://www.merriam-webster.com/dictionary/sally%20port  (last visited on November 18, 2021).

[10]  Dave describes himself as an activist and "first amendment auditor" who attempts to increase accountability and transparency by filming "those whom we employ with our tax dollars."  Dkt. No. 1-2 at 1.  *See also* Dkt. No. 54 at 7 (referring to his "activism" of "lawfully recording on-duty police officers").

**(3)** Dave makes a point of stating that "there were no verbal warnings issued by any authorized person" advising him not to enter the area. Dkt. No. 1 at 8. However, Dave's video reveals that he was immediately questioned upon entering the area by at least two uniformed police officers. Rather than respond their questions, he ignored them. When these officers persisted in asking him if they could help him, he responded rudely, telling them to go back to work because he paid their salaries. Officer Laird then told Dave he was trespassing, and rather than leaving, Dave aggressively challenged Officer Laird, stating, "Trespassing on public property? Public property that I pay for?"

**(4)** Dave states that Officer Laird approached him "without identifying himself as a police officer, or stating his agency or badge number[.]" Dkt. No. 1 at 8. This statement also paints a misleading picture. Dave's video reveals that when Officer Laird approached Dave, he was in full uniform and wearing a badge with the word "Police" written in large, visible lettering. Unless Dave is contending that he believed Officer Laird's uniform was a fake, Dave could not have been confused about Officer Laird's status as a police officer.

**(5)** Dave asserts that he "was not allowed to leave the property prior to his arrest, which, if allowed to continue his lawful activity, is exactly what he would have done." Dkt. No. 54 at 3. Dave appears to base this statement on the fact that Officer Laird "blocked" his path by stopping in front of him. *Id.* Nevertheless, Dave's video does not show him attempting to leave. It does not show him asking to leave. It does not show him doing anything designed to assure the officers present that he was not a threat and should be allowed to keep recording. Instead, Dave's video records him first ignoring the officers'

inquiries and then rudely challenging them and telling them to go back to work because he pays for their salaries and the property that they are standing on.[11]

**(6)** Dave suggests that he was in handcuffs for a period potentially in excess of three to five minutes.  Dkt. No. 1 at 9; Dkt. No. 1-2 at 19.  In total, the video of Dave's alleged arrest is five minutes and 57 second long.  The clinking sound of handcuffs coupled with Dave's allegations indicates that Officer Laird handcuffed him at approximately one minute and three seconds into the recording and uncuffed him at about three minutes and 22 seconds into the recording.  This indicates that Dave was handcuffed for a total of two minutes and 19 seconds.  Dave's video also suggests that his uncuffing was delayed by his own repeated demands to have the officers bring his phone closer and film his release.

**(7)** Dave states that he did not approach the sally port, the rear entrance of the SPIPD, or any of the officers present, and he was not "hovering" in the area, as Defendants' claim.  Dkt. No. 54 at 4.  Nevertheless, Dave's video reveals that the area behind the SPIPD was a relatively small space.  Thus, merely entering the dead-end alley directly behind the SPIPD brought him close to the open sally port, the officers present, their vehicles, and the employee-only back entrance to the SPIPD.  Furthermore, at the very beginning of his video, Dave refers to the female officer that he is filming and states, "This morning she was itching all over."  Dave has not claimed that he filmed this officer itching at some other location.  Therefore, Dave's own video suggests that he had been hanging around, or moving "to and fro near," the SPIPD in the morning and the evening,

---

[11]  It should be noted that Dave's rudeness here does not appear to be a momentary lapse.  Dave's other video submissions to this Court show that after his release he continued to repeatedly swear at, and insult, the SPIPD officers present, even going so far as to belittle one of the officers for being "old."  *See* Dave's "Live Feed" Video (showing Dave calling a grey-haired officer "old man river" and telling him to "f*&# off old man").

which suggests that he was, in fact, "hovering" about the place.  *See* https://www.merriam-webster.com/dictionary/hovering (defining hovering as moving "to and fro near a place") (last visited on November 18, 2021); https://www.merriam-webster.com/thesaurus/hovering (noting that "hanging" about a place is a synonym for "hovering" about a place) (last visited on November 18, 2021).

**E.  Analysis of Dave's First Amendment Claims**.  Dave claims that Officer Laird violated his First Amendment rights by preventing him from filming the police.  He additionally claims that Officer Laird violated his First Amendment rights by retaliating against him for filming the police and expressing his opinions.  Dkt. No. 1 at 10-14.  To state a First Amendment retaliation claim, a plaintiff must allege plausible facts indicating that "the defendants' adverse actions were *substantially motivated* against the plaintiffs' exercise of constitutionally protected conduct."  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (emphasis added); *Hunter v. City of Houston*, No. 4:19-CV-02521, 2021 WL 4481092, at *7 (S.D. Tex. Sept. 29, 2021) (same); *Durant v. Gretna City*, No. CV 19-147, 2020 WL 263669, at *24 (E.D. La. Jan. 17, 2020), *aff'd sub nom. Durant v. Brooks*, 826 F. App'x 331 (5th Cir. 2020) (same).  Moreover, to state a First Amendment retaliation claim, or a First Amendment claim of *any* type, Dave must state plausible, non-conclusory facts indicating that he was engaging in constitutionally protected activity in the first instance.  *Id.*

Dave's claims in this lawsuit somewhat resemble those raised by the plaintiff in *Turner v. Driver*, 848 F. 3d 678 (5th Cir. 2017).  In *Turner v. Driver*, Phillip Turner was filming the Fort Worth Police Station from a public sidewalk across the street.  *Id.* at 683.  Police officers Grinalds and Dyess observed Turner, approached him, and asked him to

provide identification.  Turner continued filming and did not identify himself.  *Id*.  The

Court of Appeals for the Fifth Circuit described the subsequent, relevant facts as follows:

> Grinalds repeatedly asked Turner if he had any identification.  Turner asked
> the officers whether he was being detained, and Grinalds responded that
> Turner was being detained for investigation and that the officers were
> concerned about who was walking around with a video camera.  Turner
> asked for which crime he was being detained, and Grinalds replied, "I didn't
> say you committed a crime."  Grinalds elaborated, "We have the right and
> authority to know who's walking around our facilities."
>
> Grinalds again asked for Turner's identification, and Turner asked Grinalds,
> "What happens if I don't ID myself?"  Grinalds replied, "We'll cross that
> bridge when we come to it."  Grinalds continued to request Turner's
> identification, which Turner refused to provide.  Grinalds and Dyess then
> "suddenly and without warning" handcuffed Turner and took his video
> camera from him, and Grinalds said, "This is what happens when you don't
> ID yourself."
>
> Turner requested to see a supervisor.  Grinalds continued to ask for Turner's
> ID and told him that he would be fingerprinted so the officers could learn
> his identity.  The officers placed the handcuffed Turner in the back of their
> patrol car and "left him there to sweat for a while with the windows rolled
> up."  Turner alleges that no air was getting to the back seat and that he
> banged on the door so the officers would roll down the windows.
>
> Lieutenant Driver approached Grinalds and Dyess, and they "seemingly
> ignored Mr. Turner."  The three officers then rolled down the windows of
> the patrol car and found Turner lying down in the back seat.  Lieutenant
> Driver identified himself as the commander.  Driver asked Turner what he
> was doing, and Turner explained that he was taking pictures from the
> sidewalk across the street.  Driver asked Turner for his ID, and Turner told
> the lieutenant that he did not have to identify himself because he had not
> been lawfully arrested and that he chose not to provide his identification.
> Driver responded, "You're right."
>
> Driver walked away and talked with the officers, then returned to the patrol
> car and talked with Turner.  Turner said, "You guys need to let me go
> because I haven't done anything wrong."  Driver again walked away from
> the car, talked on the phone, and spoke further with the officers.  They
> returned to the car and took Turner out of the back seat.  Driver "lectur[ed]"
> Turner, and the officers finally released him and returned his camera to
> him.

*Id.* at 683–84.

After reciting these facts and the relevant legal standards, the Fifth Circuit held, as

a matter of first impression, that "a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner*, 848 F. 3d 678, 688.  The right had been recognized in other circuits and was important, the Fifth Circuit noted, because it promoted freedom, accountability, transparency, democracy, and justice.  *Id.* at 688-89.  The Fifth Circuit did not define what time, place, and manner restrictions on this right would be reasonable in Turner's case.  *Id.* at 690.[12]  In the context of addressing his Fourth Amendment claim, however, the Court did provide some guidance that is instructive in this case.  That is, the Fifth Circuit discussed circumstances that could justify the questioning and a brief detention of an individual filming the police.

> "The Fourth Amendment is concerned with ensuring that the scope of a given detention is reasonable under the totality of the circumstances." Turner alleges that, when Grinalds and Dyess approached him, he was videotaping the police station while walking on the sidewalk across the street during midday.  Nothing in the amended complaint suggests that Turner was videotaping an arrest, a traffic stop, or any other action or activity being performed by the police in the course of their duties.  On the contrary, Turner's complaint states that he was filming only "the routine activities at the Fort Worth Police Department building."  On appeal, Grinalds and Dyess reference several attacks on police officers and police stations, including those in Dallas and Austin, and the resulting increase of security at police stations.  "[I]t [is] appropriate for the police to take into account the location of the suspicious conduct and the degree of potential danger being investigated.  What is not suspicious in one location may be highly suspicious in another."  Turner's filming in front of the police station "potentially threatened security procedures at a location where order was paramount."  An objectively reasonable person in Grinalds's or Dyess's position could have suspected that Turner was casing the station for an attack, stalking an officer, or otherwise preparing for criminal activity, and thus could have found Turner's filming of the "routine activities" of the station sufficiently suspicious to warrant questioning and a brief detention. The officers' detention of Turner under these circumstances was not "plainly incompetent" or a knowing violation of the law.

*Id.* at 691–92 (footnotes and citations omitted).

---

[12]  The Fifth Circuit did not reach this issue because it found that the right had not been clearly established prior to its decision; therefore, the defendants in question were entitled to qualified immunity.  *Turner*, 848 F. 3d 678, 687, 690.

In the instant case, Dave claims that Officer Laird's adverse actions were substantially motivated against his exercise of constitutionally protected conduct.  *See* Dkt. No. 1 at 10, 12-16.  However, his own video evidence reveals that Officer Laird:

(1)    told Dave he was trespassing, asked him what he was doing behind the SPIPD, and gave him an opportunity to explain himself before taking his phone and detaining him;

(2)    did not detain Dave until he refused to explain himself;

(3)    ordered another officer to search Dave for weapons and released him shortly thereafter;

(4)    allowed Dave to film their interaction right up until the point of Dave's detention;

(5)    allowed Dave to keep filming after his release; and

(6)    did not swear at Dave or otherwise respond in kind to Dave's insults.

Dave's video evidence also reveals that his conduct was a great deal more suspicious than that of Phillip Turner's in terms of time, place, and manner.  *See Turner*, 848 F. 3d 678, 692 ("What is not suspicious in one location may be highly suspicious in another.").  In Dave's case, just as in Turner's, Dave was filming the exterior of a police station and the "routine activities" of the police officers present, rather than "an arrest, a traffic stop, or any other action or activity being performed by the police in the course of their duties."  *See id*. at 691.  Similarly, Dave refused to provide identification when questioned.  Unlike Turner, however, when Dave was detained, he was also:

(1)    filming in the evening, rather than the middle of the day;

(2)    filming in a dead-end alley directly behind a police station, rather than on a public sidewalk across the street from a police station;

(3)    filming the non-public sally port entrance of a police station from a close proximity;

(4)    filming the non-public employee-only back entrance of a police station from a close proximity;

(5)     filming a non-public carport and parked police vehicles from a close proximity; and

(6)     filming a police officer loading or readying his vehicle under the carport from a close proximity.

Dave additionally ignored the police officers who first asked him if they could help them, and then was rude, defensive, and aggressive when questioned further.

Viewed in its entirety, Dave's video controverts his claim that Officer Laird's adverse actions were *"substantially motivated"* against his "exercise of constitutionally protected conduct." *See Keenan v. Tejeda*, 290 F.3d 252, 258 (to state a First Amendment retaliation claim, a plaintiff must allege plausible facts indicating that "the defendants' adverse actions were *substantially motivated* against the plaintiffs' exercise of constitutionally protected conduct." ) (emphasis added); *Hunter v. City of Houston*, No. 4:19-CV-02521, 2021 WL 4481092, at *7 (same); *Durant v. Gretna City*, No. CV 19-147, 2020 WL 263669, at *24 (same).  Or, put more precisely, Dave's own evidentiary submissions have rendered his claims about Officer Laird's motivation conclusory and implausible.[13]  Thus, because Dave has not alleged any other facts to contradict his own evidentiary submissions, he has failed to state a First Amendment retaliation claim against Officer Laird in his individual or official capacity.  *See id.*

Furthermore, even if this were not the case, to state a First Amendment retaliation claim, or a First Amendment claim of any type, Dave must state plausible, non-conclusory facts indicating that he was engaging in constitutionally protected activity in the first instance.  *See Keenan v. Tejeda*, 290 F.3d 252, 258.  Although the general right to film

---

[13]   As noted above, Dave has also incorporated Defendants' response to his nineteenth interrogatory into his Statement of Claims.  This response is consistent with Dave's video evidence and assists in rendering Dave's claims about Laird's motivation conclusory and implausible.

the police is clearly established in this circuit, Dave has cited no Fifth Circuit precedent or persuasive authority indicating that he had the right to personally film his own detention, with his own hand-held camera phone, while it was happening.  This Court has also searched and found no authority to that effect.

This is, perhaps, not altogether surprising.  Courts within this jurisdiction and elsewhere have pointed out that establishing such a right could create unreasonable or even potentially dangerous obstacles for law enforcement.  For example, in *Brunson v. McCorkle*, the court noted that the plaintiff's "desire to keep his hands operating his recording device" was "incompatible" with law enforcements execution of their duties because "the video recording device was in the very hands that law enforcement sought to handcuff."  No. 11CV1018 JCH/LAM, 2012 WL 13076260, at *5 (D.N.M. Sept. 18, 2012) (noting, additionally, that the plaintiff had cited no case from "any jurisdiction" which clearly established "that an arrestee has a right to video record his own detention.").  *See also Sandberg v. Englewood, Colorado*, 727 F. App'x 950, 963 (10th Cir. 2018) ("Sandberg does not point to a case in which the videographer was also the subject of the police action.  As such, it was not clearly established that officers violate the First Amendment when they prevent a person who is the subject of the police action from filming the police."); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 381 (S.D.N.Y. 2015) ("[T]he right to record police activity . . . may not apply . . . if the recording interferes with the police activity, if it is surreptitious, if it is done by the subject of the police activity[.]").

Similarly, in *Durant v. Gretna City*, Raymond Durant relied upon *Turner v. Driver* to argue that he had a First Amendment right to film while he was in handcuffs in the back seat of a police vehicle.  No. CV 19-147, 2020 WL 263669, at *25.  The court in

*Durant* distinguished *Turner v. Driver* and found "no binding or robust persuasive authority" establishing the right to record police activity by a detained person in handcuffs. *Id.* The court also noted that Durant had not identified "any Fifth Circuit precedent or persuasive authority to demonstrate that a person detained pending investigation has a First Amendment right to use a device to record police activity." *Id.*

Like the plaintiff in *Brunson v. McCorkle,* Dave's "desire to keep his hands operating his recording device" was "incompatible" with Officer Laird's attempt to handcuff him because "the video recording device was in the very hands that [Officer Laird] sought to handcuff." No. 11CV1018 JCH/LAM, 2012 WL 13076260, at *5. Officer Laird allowed Dave to film their interaction right up until the point of Dave's detention, and he allowed Dave to keep filming immediately after his release. Dave has provided no authority or persuasive caselaw to support a claim that he was entitled to personally film his own detention, with his own hand-held camera phone, while it was happening. Accordingly, because Dave has failed to state a First Amendment of any type, his First Amendment claims should be dismissed with prejudice.

Finally, even if the Court were to find that Dave has stated a First Amendment claim against Officer Laird in his individual capacity, Dave's official capacity First Amendment claims against Laird are still subject to dismissal with prejudice for the reasons provided in Defendants' Motion to Dismiss. *See* Dkt. No. 55 at 5-7 (noting that Dave's official capacity claims must be dismissed because he has failed to satisfy the requirements of *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978)).

If a plaintiff is attempting to prevail under § 1983 against a defendant in his official capacity, then the plaintiff must satisfy the *Monell* test. *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York*,

436 U.S. 658, 694).  Under *Monell*, claims against government agents or officers in their official capacities are, in essence, claims against the governmental entity itself.  *Monell*, 436 U.S. 658, 694.  A plaintiff may hold a municipality liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id*; *Truong v. Alief Indep. Sch. Dist.*, No. CV H-16-00427, 2016 WL 6680930, at *3 (S.D. Tex. Nov. 14, 2016) (same).[14]

Thus, to assert a claim against a municipality under § 1983 that satisfies *Monell,* a plaintiff must show: (1) that a policymaker acted on behalf of the municipality; (2) that the action constituted an official "policy or custom[;]" and, (3) that the policy or custom was the "moving force" that caused a violation of the plaintiff's rights.  *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167-71 (5th Cir. 2010) (citations omitted).  A plaintiff may satisfy the "policy or custom" requirement with proof of: (1) an ordinance, policy statement, regulation or decision that is officially adopted and promulgated by the municipalities' "lawmaking officers or by an official delegated policy-making authority;" or (2) "a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984); *Truong v. Alief Indep. Sch. Dist.*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same).  If a plaintiff attempts to use the actions of a municipalities' employees to prove a "custom," the employees' actions "must have

---

[14]  For § 1983 purposes, the City of South Padre Island is a municipality.  *Accord Partain v. City of S. Padre Island, Texas,* No. CV B-16-317, 2018 WL 7202486, at *11 (S.D. Tex. Dec. 5, 2018), *report and recommendation adopted,* No. 1:16-CV-00317, 2019 WL 450680 (S.D. Tex. Feb. 5, 2019), *aff'd,* 793 F. App'x 288 (5th Cir. 2019) (addressing the City of South Padre Island's municipal liability under § 1983).

occurred for so long or so frequently that the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [district] employees." *G.M. v. Shelton*, 595 F. App'x 262, 265 (5th Cir. 2014) (citing *Webster v. City of Hous.*, 735 F.2d 838, 841); *Smith v. Houston Indep. Sch. Dist.*, No. CV H-18-2938, 2018 WL 5776936, at *2 (S.D. Tex. Nov. 2, 2018) (same).  Allegations describing the target custom or policy and its relationship to an underlying constitutional violation must set out specific facts and cannot be conclusory.  *Id.* (citing *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997)); *Truong*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same).

Dave has not identified a policy or custom constituting the moving force behind the alleged violation of his First Amendment rights.  That is, he has not identified: (1) an ordinance, policy statement, regulation or decision that is officially adopted and promulgated by the municipalities' "lawmaking officers or by an official delegated policy-making authority;" or (2) "a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Hous.*, 735 F.2d 838, 841; *Truong*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same). In fact, Dave's claim that Defendants have a policy, pattern, custom, or practice which caused a violation of his First Amendment rights is undermined by his claim that the SPIPD did not question or bother another videographer who "engaged in the same 1st Amendment related activities" as he did at the "same location" at a different time prior to his visit.  Dkt. No. 1-2 at 3.  Dave's official capacity First Amendment claims against Officer Laird should be dismissed.

**F.  Analysis of Dave's Fourth Amendment Claims.**  Dave claims that Officer Laird took his phone, arrested him, searched him, and asked him to identify himself in violation of his Fourth Amendment rights.  Dkt. No. 1 at 9-10; Dkt. No. 54 at 1-3.  In the alternative, he claims that even if his seizure did not constitute an arrest, Officer Laird still searched him, detained him, and asked him to identify himself in violation of his Fourth Amendment rights.  Dkt. No. 1 at 9-10; Dkt. No. 54 at 1-3.

**(1)  Dave's False Arrest Claim**.  To state a Fourth Amendment false arrest claim, a plaintiff must allege facts indicating that: (1) he was arrested; and (2) the arresting officer did not have probable cause to make the arrest.  *Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004)); *Rhodes v. Prince*, 360 F. App'x 555, 556–60 (5th Cir. 2010) (same).

> "A seizure rises to the level of an arrest only if 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'"  The "reasonable person" is one who is "neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."   When determining whether an investigative stop amounts to an arrest, "[t]he relevant inquiry is always one of reasonableness under the circumstances," which must be considered on a case-by-case basis.  "[U]sing some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination—do not automatically convert an investigatory detention into an arrest requiring probable cause."  But, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."

*Turner*, 848 F.3d 678, 692–93 (citations omitted).  Where the facts surrounding a seizure are in dispute, the question of whether of a seizure constitutes an arrest is a mixed question of law and fact.  *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (noting that the question involves two discrete steps, where the first step involves determining the factual circumstances surrounding the seizure, and the second step involves applying the legal

reasonable person test to those circumstances to determine if a seizure constitutes an arrest as a matter of law).  Once the facts surrounding a seizure have been established, the court must determine whether the seizure constitutes an arrest.  This is a question of law that requires the court to ask whether "a reasonable person" in the suspect's position would think that the seizure constituted a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  *Id.* (citations omitted).  *See also United States v. Paul*, 142 F.3d 836, 843 (5th Cir. 1998) (referring to the ultimate question of whether a "reasonable person in the suspect's position" would view the seizure as "a restraint on freedom of movement of the degree which the law associates with formal arrest" as a question of law for the court); *Rhodes v. Prince*, 360 F. App'x 555, 559 ("[A]n 'arrest' is a legal conclusion under the Fourth Amendment and a necessary element of a false arrest claim . . . . Rhodes's allegation of 'arrest' is 'nothing more than a formulaic recitation of the elements' of a constitutional . . . claim . . . and [is] not entitled to be assumed true.'") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681; *Twombly*, 550 U.S. 544, 555) (internal quotations omitted).

Here, the Court may apply the reasonable person test to determine if Dave has stated a claim for an unlawful arrest under the Fourth Amendment because the material facts surrounding his seizure are not in dispute.  The material facts surrounding his seizure are not in dispute because: (1) Dave has submitted a video capturing the circumstances leading up to his detainment; (2) Dave has submitted a video capturing the circumstances immediately following his detainment; (3) Dave's video reveals the length of his detainment; and (4) the Court will presume the truth of all other facts asserted by Dave regarding his alleged arrest unless they are controverted by his video.  The material facts relevant to the Court's inquiry here are as follows:

(1)     Dave refused to respond to questioning or explain himself despite filming sensitive, secure areas of the SPIPD from a close vicinity.

(2)     Officer Laird provided Dave with an opportunity to explain his suspicious conduct, but instead of responding reasonably, or offering to leave, Dave became defensive, aggressive, and insulting.

(3)     Officer Laird told Dave why he was being detained, explaining that he was trespassing and stated that the SPIPD needed to find out who he was and what he was doing.

(4)     Officer Laird told Dave that he was "*about to be* under arrest for failure to I.D." He did not say that he *was* under arrest.

(5)     Officer Laird released Dave shortly after the officers determined that he was not carrying weapons.

(6)     Dave's detention was brief. He spent approximately two minutes and 19 seconds in handcuffs and only about three minutes passed from the time Officer Laird first questioned him until the time Officer Laird released him. Dave also appears to have delayed his release by attempting to insist that his release be filmed.

(7)     Dave was not shut into the back seat of a police vehicle,[15] brought into the station, extensively questioned, booked, fingerprinted, or mirandized.

(8)     The degree of force used to detain Dave was not excessive. Dave claims that Officer Laird moved him "by lifting him up by his left shoulder and dragging him forward approximately 20 feet and then pushing him quickly and violently towards the front of a police cruiser[.]" Dkt. No. 1 at 9. He also alleges that his handcuffs were "slapped on and wrenched closed." *Id.* at 5. However, beyond some localized pain and swelling to his wrists which he states subsided within hours, Dave does not allege that he was physically injured by the SPIPD. He also states that his alleged arrest did not cause him to request or obtain medical care. *Id.*

(9)     Dave he was not forced to tell the SPIPD who he was before being released.

(10)    The SPIPD did not shut off Dave's phone and they returned it to him immediately upon his release.

---

[15] It is not clear if the SPIPD put Dave into a police vehicle. Dave states that Officer Laird intended to confine him "within the fixed boundaries of the front of a patrol vehicle." Dkt. No. 1 at 13. He also states that he was "confined to the front of a patrol vehicle[.]" Dkt. No. 54 at 1. But, he also states that he was "made to stand in front of a police patrol vehicle[,]" which suggests he was not actually shut inside the vehicle. Dkt. No. 1 at 19.

These facts, viewed as a whole, allow the Court to conclude that Dave was not sensitive to the seriousness of the circumstances he created.  If not actually trespassing, he was still filming in an area where the SPIPD'S security and safety were paramount. The absence of a public entrance, coupled with the presence of the employee-only back entrance, a non-public sally port, a non-public car port, and the presence of parked police vehicles would put a reasonable person on notice that filming in this area would likely cause suspicion.  More specifically, a reasonable person filming in this area would know that their actions might cause legitimate worry or even fear on the part of the SPIPD officers who depend on the security of their building and integrity of their vehicles for their safety.  A reasonable person would also know that this worry or fear would only be amplified by rude, defensive behavior and a refusal to respond to reasonable questions.

These facts, viewed as a whole, additionally allow the Court to conclude that a reasonable person in Dave's position would not have understood his brief detention "to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'"  *See Turner*, 848 F.3d 678, 692–93 (citations omitted).  Officer Laird's detention of Dave was brief and the force he used was not excessive.  Officer Laird also told Dave why he was being detained and he released him shortly after discovering that he was not armed.  "[U]sing some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination—do not automatically convert an investigatory detention into an arrest requiring probable cause."  *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993); *Turner*, 848 F.3d 678, 693 (same).  When faced with a potentially dangerous situation, police officers "may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public[.]"  *United States v. Abdo*, 733 F.3d 562, 565 (5th

Cir. 2013); *Spoon v. City of Galveston, Texas*, No. 3:17-CV-120, 2018 WL 3032582, at *3 (S.D. Tex. June 19, 2018) (same).  Dave's video evidence has rendered his claims that he was arrested and searched in violation of the Fourth Amendment conclusory and implausible.  These claims should, therefore, be dismissed with prejudice.

**(2) Dave's Unlawful Seizure Claim**.  Dave next argues that even if his seizure did not constitute an arrest, Officer Laird still searched and detained him in violation of his Fourth Amendment rights.  Dkt. No. 1 at 9-10; Dkt. No. 54 at 1-3.  Defendants disagree, asserting that Dave has failed to state a plausible Fourth Amendment claim.  Defendants contend that, according to the law in this circuit, Officer Laird's "reasonable suspicion that criminal activity was afoot" justified his search and seizure.  Dkt. No. 55 at 12. Defendants add that Dave's official capacity Fourth Amendment claims against Laird are also subject to dismissal because he has failed to satisfy the requirements of *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978).  *Id.* at 5-7.

"A seizure begins when 'all the circumstances surrounding the incident' are such that 'a reasonable person would have believed that he was not free to leave.'"  *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *INS v. Delgado*, 466 U.S. 210, 215 (1984)).  A seizure generally violates the Fourth Amendment if it is unaccompanied by a warrant.  However, there are some exceptions to this general rule.  *Id.*  In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court held that an officer may seize and briefly detain a person to investigate when they reasonably suspect that the person is committing, or is about to commit, a crime.  *Id.* (discussing *Terry v. Ohio*).  The officer's suspicion "must be founded on specific and articulable facts rather than on a *mere* suspicion or 'hunch.'"  *Id.* (quoting *United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993)) (emphasis added).

Determining whether an officer's suspicion was reasonable requires a court to look at the totality of circumstances surrounding the seizure. *United States v. Hill*, 752 F.3d 1029, 1033 (citing *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002)). The court must consider only the information available to the officer at the time of their decision to make the seizure. *Turner*, 848 F.3d 678, 691 (citation omitted). Whether the facts support a conclusion that an officer's suspicion was reasonable "is a question of law" for the Court. *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011)). *See also United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010) ("the ultimate question" of whether "facts add up to establish an appropriate level of reasonable articulable suspicion of criminality or danger is a question of law"). The officer's action must also be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20.

In the instant case, Dave's video, again, makes certain facts and conclusions clear. First, Officer Laird's seizure of Dave began when he grabbed him, took his phone, and placed him in handcuffs. A reasonable person in Dave's position would not have felt free to leave once this occurred. *See Hill*, 752 F.3d 1029, 1033 ("A seizure begins when 'all the circumstances surrounding the incident' are such that 'a reasonable person would have believed that he was not free to leave.'") (quoting *INS v. Delgado*, 466 U.S. 210, 215). Second, Officer Laird's seizure of Dave ended less than three minutes later when he released Dave and returned his phone.

Third, Dave's claim, that Officer Laird had no reasonable, articulable suspicion that he had committed a crime, or was about to commit a crime (*see* Dkt. No. 1 at 16-17; Dkt. No. 54 at 1, 6), is controverted by his own video evidence. Upon approaching Dave,

Officer Laird immediately told Dave that he was trespassing.  He then asked him what he was doing and had him searched for weapons when Dave would not respond.  Dave argues that he was not trespassing, but even if true, this argument misses the point.  It is evident from Dave's video that Officer Laird believed that Dave's behavior posed an unlawful threat to the safety and security of the SPIPD.  It is also clear that Officer Laird's belief about Dave's behavior was also objectively reasonable.  As already discussed above, Dave's video reveals that: (1) he was filming a sensitive, secure areas of the SPIPD from a close vicinity; (2) he was filming parked police vehicles from a close vicinity; (3) he was filming at least one officer readying his police vehicle from a close vicinity; (4) he was ignoring the police officers who asked him if they could help him; and (5) he was insulting, defensive, and aggressive when questioned further.  A reasonable person in Officer Laird's position would have cause to worry that Dave posed an unlawful threat to the SPIPD's security and the safety of its officers.  Dave's video confirms that Officer Laird acted on that worry by briefly detaining Dave to search for weapons and find out why Dave was filming these secure, sensitive areas.  Accordingly, Dave's claim that Officer Laird had no reasonable, articulable suspicion that he had committed a crime, or was about to commit a crime is simply not plausible in light of the video evidence that Dave himself has submitted.[16]

Fourth, Dave's video reveals that Officer Laird's actions were justified at their inception and "reasonably related in scope to the circumstances which justified the interference in the first place."  *See Terry v. Ohio*, 392 U.S. 1, 19–20 (opining that an officer's action must be "justified at its inception" and "reasonably related in scope to the

---

[16]   Dave has also incorporated Defendants' response to his nineteenth interrogatory into his Statement of Claims.  This interrogatory response is consistent with Dave's video evidence and assists in rendering Dave's claims about Laird's lack of reasonable suspicion implausible.

circumstances which justified the interference in the first place."). As just discussed, Officer Laird's seizure and search of Dave was justified at its inception, and he released Dave shortly after discovering that he was not armed. Further, according to Dave's Complaint, the officer who searched him only searched his outer clothing and pockets and the amount of force Laird used did not cause Dave to require any medical attention. Dkt. No. 1 at 5. 9.

Finally, even if the Court were to find that Dave has stated a Fourth Amendment claim against Officer Laird in his individual capacity, Dave's official capacity Fourth Amendment claims against Laird are still subject to dismissal with prejudice for the reasons provided in Defendants' Motion to Dismiss. *See* Dkt. No. 55 at 5-7 (noting that Dave's official capacity claims must be dismissed because he has failed to satisfy the requirements of *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978)).

As noted above, if a plaintiff is attempting to prevail under § 1983 against a defendant in his official capacity, then the plaintiff must satisfy the *Monell* test. *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, (citing *Monell*, 436 U.S. 658, 694). Under *Monell*, claims against government agents or officers in their official capacities are, in essence, claims against the governmental entity itself. *Monell*, 436 U.S. 658, 694. A plaintiff may hold a municipality liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id*; *Truong*, No. CV H-16-00427, 2016 WL 6680930, at *3.[17]

To assert a claim against a municipality under § 1983 that satisfies *Monell*, a

---

[17] Again, for § 1983 purposes, the City of South Padre Island is a municipality. *Accord Partain v. City of S. Padre Island, Texas,* No. CV B-16-317, 2018 WL 7202486, at *11 (addressing the City of South Padre Island's municipal liability under § 1983).

plaintiff must show: (1) that a policymaker acted on behalf of the municipality; (2) that the action constituted an official "policy or custom[;]" and, (3) that the policy or custom was the "moving force" that caused a violation of the plaintiff's rights. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167-71 (citations omitted). A plaintiff may satisfy the "policy or custom" requirement with proof of: (1) an ordinance, policy statement, regulation or decision that is officially adopted and promulgated by the municipalities' "lawmaking officers or by an official delegated policy-making authority;" or (2) "a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d 838, 841; *Truong*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same). If a plaintiff attempts to use the actions of a municipalities' employees to prove a "custom," the employees' actions "must have occurred for so long or so frequently that the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [district] employees." *G.M. v. Shelton*, 595 F. App'x 262, 265 (citing *Webster*, 735 F.2d 838, 841); *Smith v. Houston Indep. Sch. Dist.*, No. CV H-18-2938, 2018 WL 5776936, at *2 (same). Allegations describing the target custom or policy and its relationship to an underlying constitutional violation must set out specific facts and cannot be conclusory. *Id.* (citing *Spiller v. City of Tex. City*, 130 F.3d 162, 167); *Truong*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same).

Dave has not identified a policy or custom constituting the moving force behind the alleged violation of his Fourth Amendment rights. That is, he has not identified: (1) an ordinance, policy statement, regulation or decision that is officially adopted and promulgated by the municipalities' "lawmaking officers or by an official delegated policy-

making authority;" or (2) "a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d 838, 841; *Truong*, No. CV H-16-00427, 2016 WL 6680930, at *3 (same).   Accordingly, Dave's official capacity Fourth Amendment claims against Officer Laird should be dismissed with prejudice.

>    **G.   Analysis of Dave's Fifth Amendment Claims**.   In his Complaint and Statement of Claims, Dave states that Defendants violated his Fifth Amendment right not to speak to the police and his right against self-incrimination.   Dkt. No. 1 at 3; Dkt. No. 54 at 6.   Dave has not elaborated on his purported Fifth Amendment claims or listed them as a cause of action.   *See generally* Dkt. Nos. 1 and 54.   Presumably, Dave believes that Officer Laird violated his Fifth Amendment rights by asking him to identify himself and explain what he was doing.

>    The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."   U.S. Const. amend. V.   The self-incrimination clause of the Fifth Amendment is incorporated in the Due Process Clause of the Fourteenth Amendment, and thus applies to the States. *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citing *Malloy v. Hogan*, 378 U.S. 1, 6-11 (1964)).   In *Miranda v. Arizona*, the United States Supreme Court found "that the statements given by a defendant during a custodial interrogation are inadmissible at trial unless, prior to questioning, the suspect '[is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'"   *DeCossas v. St.*

*Tammany Parish School Board*, Civil Action Case No. 16-3786, 2017 WL 3971248, at *11

(E.D. La., Sept. 8, 2017) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

As noted recently by the court in *Mohamed for A.M. v. Irving Indep. Sch. Dist,*

however, a plaintiff may not bring a § 1983 case for damages for a violation of the Fifth

Amendment "when the information allegedly improperly obtained was never actually

used against him in a criminal case." 252 F. Supp. 3d 602, 619 (N.D. Tex. 2017) (citing

*Chavez v. Martinez*, 538 U.S. 760, 765–73 (2003)).

> As the Supreme Court stated in *Chavez*, "[M]ere coercion does not violate
> the Self–Incrimination Clause absent use of the compelled statements in a
> criminal case against a witness." *Id.* at 769, 123 S.Ct. 1994. "The Fifth
> Amendment privilege against self-incrimination is a fundamental trial right
> [that] can be violated only *at trial*, even though pre-trial conduct by law
> enforcement officials may ultimately impair that right." *Murray v. Earle*,
> 405 F.3d 278, 285 (5th Cir. 2005) (original emphasis); *see also Moore v.
> City of Grand Prairie*, 2013 WL 3146780, at *7 (N.D. Tex. June 20, 2013)
> (McBryde, J.) ("As the Court in  *Chavez* made clear, an individual who is
> never prosecuted for a crime nor compelled to be a witness against herself
> in a criminal case cannot allege a violation of the Fifth Amendment's
> protection against self incrimination.").

*Id.  See also Alexander v. City of Round Rock*, 854 F.3d 298, 307 (5th Cir. 2017) ("'[T]he

Fifth Amendment privilege against self-incrimination is a fundamental trial right which

can be violated only *at trial*.'. . . Alexander was never tried. His Fifth Amendment right

against self-incrimination was not violated.") (citations omitted).

Dave is not facing charges or trial.  Beyond that, he does not even allege that he

provided his identity or any other information to the SPIPD.  His purported Fifth

Amendment claims should, therefore, be dismissed with prejudice.  *See Chavez v.

Martinez*, 538 U.S. 760, 765–73; *Alexander v. City of Round Rock*, 854 F.3d 298, 307;

*Murray v. Earle*, 405 F.3d 278, 285;  *Mohamed for A.M. v. Irving Indep. Sch. Dist*, 252

F. Supp. 3d 602, 619.  Moreover, as with his other claims, any purported official capacity

Fifth Amendment claims are also subject to dismissal with prejudice for the reasons

provided in Defendants' Motion to Dismiss.  *See* Dkt. No. 55 at 5-7 (noting that Dave's official capacity claims must be dismissed because he has failed to satisfy the requirements of *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978)).

**H. Analysis of Dave's Sixth Amendment Claim**.  In his Statement of Claims, Dave states that Defendants violated his Sixth Amendment right not to speak to the police. Dkt. No. 54 at 6.  Dave has not elaborated on this purported Sixth Amendment claim or listed it as a cause of action in his Complaint.  *See generally* Dkt. Nos. 1 and 54.  The Sixth Amendment provides, in its entirety:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favour; and to have the assistance of counsel for his defence.

U.S. Const. amend. VI.  Dave has not identified a violation of his Sixth Amendment rights. Thus, his purported Sixth Amendment claim should be dismissed with prejudice. Moreover, as with his other claims, any purported official capacity Sixth Amendment claims are also subject to dismissal for the reasons provided in Defendants' Motion to Dismiss.  *See* Dkt. No. 55 at 5-7 (noting that Dave's official capacity claims must be dismissed because he has failed to satisfy the requirements *of Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978)).

**I. Analysis of Dave's Fourteenth Amendment Claim**.  Dave states that Defendants violated his Fourteenth Amendment rights.  Dkt. No. 1 at 3.  Dave has not elaborated on this purported claim or listed it as a cause of action.  *See generally* Dkt. Nos. 1 and 54.

Pursuant to the Fourteenth Amendment, no state shall "deprive a person of life, liberty or property without due process of law." U.S. Const. amend. XIV. This right to due process also protects against "state-occasioned damage to a person's bodily integrity[.]" *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) (citing *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981)). Nevertheless, claims of unlawful detainment or arrest must be analyzed under the Fourth Amendment, not the Fourteenth Amendment. *See Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015) ("Bosarge's claims of unlawful arrest and detention should be analyzed under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause."); *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir.2010) ("Cuadra's Fourteenth Amendment claims are based on alleged pretrial deprivations of his constitutional rights and, under the holding in *Albrigh*t, such claims should be brought under the Fourth Amendment.") (citing *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion)); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir.1994) (finding that although the plaintiff claimed that her arrest and detention violated both the Fourth and Fourteenth Amendments, her claim was "properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations").

Dave has failed to state a claim under the Fourteenth Amendment. Therefore, to the extent that he has attempted to raise such a claim, it should be dismissed with prejudice. Moreover, as with his other claims, any purported official capacity Fourteenth Amendment claims are also subject to dismissal with prejudice for the reasons provided in Defendants' Motion to Dismiss. *See* Dkt. No. 55 at 5-7 (noting that Dave's official

capacity claims must be dismissed because he has failed to satisfy the requirements of *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978)).

**J. Conclusion.**  Dave has failed to state a claim against Officer Laird in his official or individual capacity.  Therefore, his claims against Chief O'Carroll and the City, which are premised upon the conduct of Officer Laird, are also subject to dismissal with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 12(b)(6) (allowing for the dismissal of claims with prejudice if the plaintiff fails "to state a claim upon which relief can be granted").  *See also Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc) ("We have stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'") (quoting *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)); *Windham v. Harris Cty., Texas*, 875 F.3d 229, 243 (5th Cir. 2017) (same).

## V.  Recommendation

For the foregoing reasons, it is recommended that the Court **GRANT** Defendants' Motion to Dismiss in part.  *See* Dkt. No. 55.  Specifically, it is recommended that the Court **DISMISS** with prejudice all claims against Officer Laird, and all claims against the Defendants which are based upon the conduct of Officer Laird.

## VI.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

        **SIGNED** on this **30th** day of **November**, **2021**, at Brownsville, Texas.

_____

**Ignacio Torteya, III**
**United States Magistrate Judge**